FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 NOV 25 PM 1: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAVID COLE,                          }
                                     }
     Plaintiff                       }
                                     }        CIVIL ACTION NO.
     vs.                             }
                                     }        CV-96-AR-0993-S
THE CITY OF BIRMINGHAM and           }
WILLIAM HENDRICKS,                   }
                                     }
     Defendants                      }

ENTERED

NOV 2 5 1997

## MEMORANDUM OPINION

David Cole ("Cole"), a black male, sues the City of
Birmingham ("Birmingham") and Birmingham police officer William
Hendricks ("Hendricks") for false arrest, malicious prosecution,
and the use of excessive force, all pursuant to § 1983 and
Alabama state law.  He also asserts claims under state law for
trespass and assault and battery.  Presently before the court is
defendants' motion for summary judgment on all counts.  Viewing
the facts in the light most favorable to Cole, the court finds
that there are no genuine issues of material fact and that
summary judgment is appropriate on all claims.  Because Cole's
attorney failed to file a brief or evidentiary documents in
opposition to defendants' motion for summary judgment, the court
reaches its decision upon defendants' brief and evidentiary
submissions, along with this court's own legal research.

1

### I. Facts

On Saturday, May 28, 1995, David Cole was washing his car outside his home in Birmingham, when he and a cousin heard gun shots from some distance away.  The men commented about the gun shots and shortly thereafter one of Cole's cousins arrived at Cole's home.  The three men overheard more gun shots.  Within minutes another cousin arrived, along with two friends, bringing the total number of men to six, all black.  Cole testified that he had often heard gun shots ring out from a nearby bar and, on those occasions, he had called the police.  He did not telephone the police on this occasion.

Having also overheard the gun shots, Birmingham police officer William Hendricks, a white male, drove up to Cole's residence.  Hendricks testified that he believed the shots originated from the area close to Cole's home.  Hendricks did not call for backup from other police officers.  However, he had advised the precinct that he had heard gun fire and had advised the precinct of his location.  Based upon past experience he anticipated that, under the circumstances, other officers would arrive at the scene shortly.  When Hendricks approached the six men, he inquired as to whether they had been shooting.  Cole testified that Hendricks asked "What y'all niggers doing shooting?" Cole Depo. at 50.  Hendricks denies that he used a

2

racial epithet.

The men say that they denied responsibility for the gun shots and denied possessing any weapons.  Hendricks testified that one of the men claimed the shots rang out from a westerly direction, while another claimed that the gun fire had come from an easterly direction.  Hendricks then ordered the men on their knees.  The men complied and Cole suggested that Hendricks search them.  As Hendricks began to frisk them for weapons, Cole's neighbors called out to the officer indicating that the shots had not come from the Cole residence.

After Hendricks frisked Cole, and determined that there was no need to frisk a second man because he only wore tight fitting shorts, Cole rose from the ground.  He put his hands in his pockets to get his keys and commented that he was going inside his house to call his mother's employer, who is an attorney. Cole testified that the officer did not respond verbally. Instead, as Cole approached the house, Hendricks pushed Cole against the door, hit him with a club and handcuffed him.  In his complaint, Cole asserts that he was "beaten" by Hendricks who then arrested Cole in order to cover the beating.  *Complaint* at Par. 6.

3

In contrast, Hendricks testified that Cole said nothing about calling an attorney but instead put his hands in his pocket, said something to the effect that nobody was going to search him, and called the officer a "white m------ f-----." Hendricks Depo. at 24.  This court has an obligation to view the facts in the light most favorable to the plaintiff, and thus far cannot assume the truth of what Hendricks says but must assume the truth of what Cole says.  *Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir. 1995).

Cole was arrested and charged with disorderly conduct and failing to obey a police officer.  In the municipal court he was found not guilty of the disorderly conduct charge, but was convicted of failing to obey a police officer.  Cole appealed the conviction and was acquitted by a jury in a trial *de novo*.

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P. 56(c).  Once a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the

4

adverse party's response, by affidavits or as otherwise..., must set forth specific facts showing that there is a genuine issue for trial." .F.R.Civ.P. 56(e). Consequently, because Cole's attorney failed to submit any evidence, the court can only rely on the scant excerpts from Cole's deposition submitted as evidence by the defendants.

### III. § 1983 Claims Against The City of Birmingham

#### A. Inadequate Training & Supervision Claims

Cole asserts that Birmingham's inadequate training and supervision of its police officers was the proximate cause of his injuries. "[I]nadequacy of police training may serve as the basis for § 1983 liability <u>only</u> where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989) (emphasis supplied). To establish deliberate indifference, Cole must first show that the training program in question was inadequate. *See id.* at 390, 1205. If he can meet this first requirement, he must then show that the inadequate training resulted from the city's "deliberate" or "conscious" indifference to the rights of persons with whom the police encounter. *Id.* at 388 - 89, 1204 - 05.

5

*City of Canton* was most recently elaborated upon by the Eleventh
Circuit in *Sewell v. Lake Hamilton, Fla.*, 117 F.3d 488 (11th Cir.
1997).

After reviewing defendants' training evidence, there is
nothing to suggest that Birmingham's police officer training
program was inadequate.  Officer Hendricks successfully completed
a nineteen week training program where classes were generally
held five days per week from 8:00 a.m. until 5:00 p.m.
*Defendants' Brief*, Exhibit 11.  During that program, the city
provided instruction for at least: 1) four hours on "Search &
Seizure," 2) six hours on "Laws and Techniques of Arrest," and 3)
four hours on "Rules of Evidence."  Exhibit, 11.  The city then
provided at least nine hours of review on "Search and Seizure,"
as well as "Laws of Techniques of Arrest."  *Id.*  Furthermore,
there were numerous examinations during the nineteen week course.
Without evidence to the contrary, this court can find no
inadequacies in Birmingham's training program.

Likewise, there is no evidence in the record to support
Cole's failure to supervise claim.  Officers who graduate from
training are supervised via the "Field Training Program."
Affidavit of Police Chief Johnnie Johnson, Jr., Exhibit 10.
Under this program, the rookie officer rides with an experienced

6

officer who evaluates the rookie on everything from the officer's familiarity with department policies and procedures to his ability to relate to persons from other ethnic groups. *Id.*; Exhibit 11. Consequently, Birmingham is entitled to summary judgment on Cole's § 1983 inadequate training and supervision claims.

### B. "Unconstitutional Patterns or Customs In Executing Arrests,"[1] Malicious Prosecution, And Excessive Force Claims.

Like his other § 1983 claims, Cole's false arrest and malicious prosecution claims fail. There is no evidence in the record to support Cole's assertion that Birmingham has an official "policy or custom" of effectuating false arrests or maliciously pursuing prosecutions. *See Monell v. Department of Social Services Of City of New York*, 436 U.S. 658, 693, 98 S. Ct. 2018, 2037 (1978). Accordingly, summary judgment is appropriate on all federal claims asserted against Birmingham.

### IV. § 1983 Claims Against Officer Hendricks In His Individual Capacity.

Cole's complaint appears to assert § 1983 claims against Hendricks, in his individual capacity, for false arrest,

---

[1] This quoted language, taken from Cole's complaint, presumable asserts a claim for false arrest.

7

malicious prosecution, and excessive force.  Such claims are cognizable under § 1983 because they involve allegations that Fourth Amendment rights were violated.  *See McMillian v. Johnson*, 878 F. Supp. 1473, 1489 (M.D. Ala. 1995) (noting that § 1983 is not a source of federal rights) (citing *Albright v. Oliver*, 510 U.S. 271, 114 S. Ct. 807, 811 (1994)), *rev'd in part and aff'd in part on other grounds,* 88 F.3d 1554, 101 F.3d 1363 (11th Cir. 1996).   Specifically, "[a] warrantless arrest without probable cause violates the Forth Amendment and forms a basis for a section § 1983 claim."  *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  The right to be free from unlawful restraint and the attendant prosecution that follows are also Fourth Amendment rights.  *Whiting v. Traylor*, 85 F.3d 581, 584, n.4 (11th Cir. 1996). *See Kelly v. Curtis*, 21 F.3d 1544, 1553 - 55 (11th Cir. 1994).  Similarly, the right to be free from excessive force, administered by the police, is a right grounded in the Fourth Amendment.  *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997).  Hendricks asserts the defense of qualified immunity in response to Cole's Fourth Amendment Claims.

**A. False Arrest Claims**

Police officers have the authority to make warrantless arrests as long as there is probable cause to believe that a

8

suspect has committed, was in the process of committing, or was
about to commit a crime. *Von Stein v. Brescher*, 904 F.2d 572,
579 (11th Cir. 1990); *Williamson v. Mills*, 65 F.3d 155, 158 (11th
Cir. 1995). Under Birmingham's laws, a person who "refuse[s] or
fail[s] to comply with any lawful order, signal or direction of a
police officer" is guilty of failing to obey a police officer.
Birmingham City Ordinance Sec. 11-5-7. Cole admits that, prior
to the arrest, Hendricks ordered all the men on their knees and
began frisking them. Cole Depo. at 58. Along with such an order
from a police officer is the implication that the citizen should
remain on his knees until told to do otherwise. By rising from
his knees, before Hendricks indicated Cole could stand up, Cole
was at least technically in violation of Hendricks' command.
There was room for interpreting the facts in favor of guilt or in
favor of innocence. The municipal court judge found one way. A
subsequent jury found the other way.

In the abstract Cole's violation might appear innocuous and
not worthy of prosecution. However, Hendricks faced a
potentially dangerous situation. He had heard several rounds of
gun fire and, when questioned, the men made conflicting
statements regarding the direction from which the gun fire had
emanated. He was without "back up," and Cole, who was a
potential suspect, had discontinued complying with Hendricks'

lawful commands.  Given the inherent danger presented by these
circumstances, this court cannot say that the arrest was
unjustified, particularly inasmuch as Cole was convicted of
refusal to obey, a conviction that creates a rebuttable
presumption against Cole on this issue.  Surely the exoneration
on a trial *de novo* does not constitute an absolute rebuttal.

That Cole violated a lawful police order was found to be
true by a judge.  That the judge was reversed does not remove
entirely the existence of probable cause inherent in the
conviction.  As understandable as Cole's reason for doing what he
did may have been, an arguable violation is an arguable
violation.  Unlike the courts that tried Cole's criminal charges,
it is not for this court to decide whether Cole was, in fact,
guilty of resisting arrest and/or guilty of failure to obey.  The
two charges are sufficiently close in their essential elements to
provide Hendricks an arguable reason to have brought both charges
arising out of the same incident without risking § 1983 liability
in one and not in the other; but giving Cole the benefit of the
doubt, this court holds that Officer Hendricks, as a matter of
law, had probable cause to arrest Cole for failing to obey an
officer, and does not express itself on the issue of whether
Hendricks had probable cause to arrest Cole for disorderly
conduct.  Nevertheless, the absence of probable cause on one

10

charge is not fatal where there is probable cause to arrest on another charge. *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973)[2]; *Bailey v. Board of County Commissioners of Alachua County*, 956 F.2d 1112, 1119 n.4 (11th Cir.), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98 (1992). Because probable cause "constitutes an absolute bar to a section 1983 action for false arrest," *Ortega*, 85 F.3d at 1525, this court need not address Hendricks's qualified immunity defense as it relates to the false arrest claim. The court simply notes that summary judgment is also appropriate because "actual" probable cause is not required where qualified immunity is asserted as a defense to a Fourth Amendment claim. *Von Stein*, 904 F.2d at 579. Instead, only "arguable" probable cause is enough to protect police officers from liability. *Id.*

## B. Malicious Prosecution Claims

Establishing the absence of probable cause is vital to maintaining a malicious prosecution claim. *NAACP v. Hunt*, 891 F.2d 1555, 1563 (1990). In light of the court's finding that there was probable cause to arrest Cole on the failure to obey charge, his malicious prosecution claim, based on that charge, does not survive Rule 56 scrutiny.

---

[2] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

11

Because the court has not expressly determined that probable cause existed to arrest Cole for disorderly conduct, analysis of this claim differs from the false arrest charge.[3]  Defendants point out that Hendricks was not responsible for the decision to prosecute the charges made against Cole, and there is nothing in the record to contradict this assertion. *Defendants' Brief* at 12.  Therefore, absent a showing that the information Hendricks supplied to the magistrate was "perjurious or recklessly false," *See e.g. Kelly*, 21 F.3d at 1553 - 55, *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988), or that he intentionally withheld exculpatory information, there is no basis upon which to sustain a malicious prosecution claim under § 1983. *See Kelly*, 21 F.3d. at 1553 - 55.  Without such evidence, Cole cannot show malice, nor can he show that Hendricks contributed to the prosecution of the disorderly conduct claim. *See Whiting*, 85 F.3d at 586 n.10 (discussing causation in the context of a malicious prosecution

---

[3]  The Birmingham City Disorderly Conduct ordinance provides:
"(a) A person commits the offense of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
    (1) engages in fighting or violent, tumultuous or <u>threatening behavior</u>;
    (2) makes unreasonable noise;
    (3) in a public place uses abusive or obscene language or makes an obscene gesture:
    (4) without lawful authority, disturbs any lawful assembly or meeting of persons:
    (5) obstructs vehicular or pedestrian traffic, or a transportation facility; or
    (6) congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.
(b) It shall be unlawful for any person to commit the offense of disorderly conduct as defined by this section."  Sec. 11-6-8 (emphasis supplied).

claim). Thus, the malicious prosecution claim on the disorderly
conduct charge also fails.


## C. Excessive Force Claims

In his complaint, Cole asserts that he was beaten by
Hendricks and only arrested in order to cover the abuse. Given
this court's determination that probable cause supported Cole's
arrest, the court will treat Cole's assertion as an excessive
force claim. There is no doubt that Cole has a Fourth Amendment
right to be free from excessive force during an arrest. *Gold*,
121 F.3d at 1446.


However, Hendricks asserts the defense of qualified
immunity. A state actor who asserts qualified immunity as a
defense must first show that he was acting within the scope of
his discretionary authority. *Hartsfield v. Lemacks*, 50 F.3d 950,
953 (11th Cir. 1995); *McMillian*, 878 F. Supp. at 1490 (noting
that discretionary authority means as a part of, and in
accordance with, the state actor's normal job duties). Because
police officers are authorized to make warrantless arrests, there
is no evidence that Hendricks was acting outside the scope of his
discretionary authority when he arrested Cole.

Therefore, in order for Cole's claims to go forward, the burden shifts to him to show that Hendricks violated "clearly established statutory or constitutional rights" of which a reasonable officer in Hendricks' position would have known. *See Smith v. Mattox*, No. 96-6648, 1997 WL 693887, at *2 (11th Cir. Nov. 19, 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800. 818, 102 S. Ct. 2727, 2738 (1982)). "A reasonable [officer's] awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that his conduct infringes the right." *Smith*, 1997 WL 692887 at *2. Generally, a plaintiff must come forward with a "controlling and factually similar case" which shows that <u>the level of force used was excessive</u>. *Id.* When such precedent is unavailable, as in the present case, a plaintiff can overcome a qualified immunity defense "only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Id.* (citing, *United States v. Lanier*, ___ U.S. ___, ___, 117 S. Ct. 1219, 1227 (1997)). When determining if the conduct was obviously outside Fourth Amendment protection, the court should weigh all the circumstances including the following factors: (1) the severity of the crime, (2) whether there was an immediate threat to the officer or bystanders, and (3) whether there was any effort to

14

resist arrest.  *Smith*, 1997 WL 692887 at *3 (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989)). Finally, the court should consider the "need for force, the amount of force used, and the injury inflicted." *Jones v. City of Dothan, Alabama,* 121 F.3d 1456, 1460 (11th Cir. 1997).

The court is not convinced that Hendricks' conduct was so obviously outside the protection of the Fourth Amendment that a reasonable officer would have known he was violating established rights.  When asked what happened after he arose from the ground, Cole explains that he was shoved into the front door of the house and hit on the head with a baton and handcuffed.  Cole Depo. at 62.  The threat that Cole posed to the lone officer and the absence of evidence that Cole's injury was anything but minimal weigh heavily against Cole's excessive force claim.  Officer Hendricks had heard gun shots ring out shortly before his encounter with Cole.  When Cole arose from the ground, there were four men whom he had not frisked.  One of them could have had a gun.  As Cole approached his home, Hendricks could not be certain that Cole was not going to obtain a weapon or retrieve a gun he my have previously fired.  Moreover, Cole was so close to his home when Hendricks approached, that Cole was pushed into his house during the arrest.  Such close proximity to the house only heightens the level of uncertainty and possibility of danger

15

because Cole may have had a weapon just inside the door.  While
the relatively minor nature of the criminal conduct and the
absence of evidence regarding any resistance to the arrest weigh
in Cole's favor, these factors do not outweigh the admitted
dangers inherent in the encounter.

As the Eleventh Circuit has recognized, there is a "hazy
boarder between excessive and acceptable force."  *Smith*, 1997 WL
693887, at *2.  "Not every push or shove, even if it may seem
unnecessary in the peace of a judge's chambers, violates a
prisoner's constitutional rights."  *Byrd v. Clark* 783 F.2d 1002,
1006 (11th Cir. 1986).  The amount of force used here did not
violate Cole's clearly established constitutional rights against
excessive force.

The court notes that Cole's testimony regarding Hendricks'
use of a racial epithet, when he approached Cole and the other
men, gives cause for concern.  Generally, when analyzing an
excessive force claim, an inquiry into "the officer's intent,
whether evil or good, is irrelevant."  *Smith*, 1997 WL 693887 at *
3.  However, in *Brown v. City of Hialeah*, 30 F.3d 1433, 1435 –
1436 (11th Cir. 1997), the Eleventh Circuit recognized the
appropriateness of considering evidence of racial slurs when
analyzing the reasonableness of an officer's conduct in an

16

excessive force case. "[W]e accept that sometimes words spoken while actions are being taken can be useful to one seeking to determine from all the circumstances the reasonableness of the actions," opined the Eleventh Circuit. *Id.* at 1436. On the other hand, the *Brown* court also noted that the use of offensive language does not necessarily lead to a conclusion that the level of force used was excessive. *See id.* (discussing a Ninth Circuit case where profanity was used by police during an arrest).

As previously indicated, there is no evidence in the instant case to show that Cole's arrest led to anything more than a minimal injury. In addition, there is no evidence that Hendricks used offensive language during the arrest itself or while Cole was in custody. Moreover, Cole's actions had increased the risk of danger to the officer. Given the totality of circumstances, the court is not prepared to find that the level of force used by Officer Hendricks would have indicated to a reasonable officer that he was exceeding the bounds of Fourth Amendment protection: notwithstanding the offensive language used prior to the arrest. Therefore, Hendricks is protected by qualified immunity and entitled to summary judgment on Cole's excessive force claim.

17

## V. State Law Claims

In addition to his federal claims, Cole asserts state law claims against the defendants for false arrest, malicious prosecution, excessive force, trespass and assault and battery. Like his federal claims, these state law claims cannot survive summary judgment. First this court notes that law enforcement officers are immune from tort liability when performing duties within their discretionary functions and within the line and scope of their employment. Code of Alabama § 6-5-338. Because there is no evidence that Hendricks' conduct was beyond the bounds of his discretionary authority, he is immune from suit on Cole's state law claims.

Second, the city also enjoys immunity, pursuant to § 11-47-190 of the Code of Alabama. Under § 11-47-190, a municipality is only subject to suit for injuries or wrongs caused by "neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality....acting within the line of his or her duty...." Code of Alabama § 11-47-190. Because Cole's complaint does not charge negligence and is unsupported by any evidence of negligence, or evidence that Hendricks acted outside the scope of his duty, the city is also entitled to qualified immunity. Even if immunity were not available to these defendants, Cole's state

18

law claims would fail.

## A. False Arrest Claims

Under Alabama law, probable cause is the "only requisite" necessary to support an arrest. *Rose v. Jackson's Gap*, 952 F. Supp. 757, 766 (M.D. Ala. 1996) (citing *Carruth v. Barker*, 454 So.2d 539, 540 (Ala. 1984). Probable cause exists where the officer reasonably believes that an offense has been committed. *Rose*, 952 F. Supp. at 766. In accordance with this court's finding, in considering potential § 1983 liability, that probable cause supported Cole's arrest, Cole's state law false arrest claims against both Birmingham and Hendricks are without merit.

## B. Malicious Prosecution Claims

Malicious prosecution claims cannot be maintained against a municipal entity, in Alabama, because such bodies cannot be deemed to act with malice. *Franklin v. City of Huntsville*, 670 So.2d 848, 850, 852 (Ala. 1995). Therefore, summary judgment is appropriate on the state law claim of malicious prosecution asserted against Birmingham.

An Alabama complainant alleging malicious prosecution against an individual must prove there was: (1) a prior judicial proceeding, (2) instigated by the defendant without probable

cause, (3) instigated by the defendant with malice, (4) ending in favor of the plaintiff, and (5) causing injury to the plaintiff. *Alabama Power Co., v. Neighbors*, 402 So.2d 958, 962 (Ala. 1981). Given this court's finding that there was probable cause to arrest Cole for failing to obey an officer, he cannot meet element two: prior judicial proceeding instigated without probable cause.

Although this court did not reach the issue of probable cause on Cole's disorderly conduct claim, this claim too must fail. Vital to Cole's claim is some evidence that Hendricks instigated the prosecution with malice and thereby caused injury to Cole. No such evidence can be found in the record. The only evidence surrounding this claim is proof that Cole was acquitted on one charge and that the other was vacated on appeal. As spelled out above, more is required to make out a malicious prosecution claim. Thhis claim is probably also barred by § 6-5-338 as against Hendricks. Accordingly, Cole's malicious prosecution claims against both defendants fail.

## C. Excessive Force Claims

A police officer may use reasonable force to make an arrest and is only liable if "more force is used than is necessary to

effectuate the arrest." *Franklin*, 670 So.2d at 852.  In the present case, there are no affidavits or other evidentiary material to support Cole's claim that Hendricks used excessive force.  The only evidence relating to this claim is Cole's deposition testimony indicating that Hendricks struck Cole on the back of the head with a baton.  Such testimony is not evidence that the blow was delivered forcefully, excessively, or that Cole was injured by the blow.  Without enough evidence to create a genuine issue of fact regarding the extent of force used, this claim cannot survive summary judgment.  This claim against Hendricks is also barred by § 6-5-338.

### D. Assault, Battery and Trespass Claims

Under Alabama law an assault occurs when the defendant engages in intentional and unlawful conduct which creates a reasonable apprehension, in another person, that a battery is imminent, " coupled with the apparent present ability to effectuate the [battery], if not prevented.  A successful assault becomes a battery, which consists of the [unlawful] touching of another in a hostile manner." *Wright v. Wright*, 654 So.2d. 542, 544 (Ala. 1995) (citations omitted).  Because Cole's assault and battery claims turn on the unlawfulness of Henricks' conduct, they are without merit.  Cole was lawfully arrested, and there is nothing upon which to base a finding of excessive force.  Lastly,

§ 6-5-338 stands in the way.  Consequently, summary judgment is appropriate on the assault and battery claims.

Likewise, both the lawfulness of Hendricks' conduct and § 6-5-338 is fatal to Cole's trespass claim.  In Alabama, a trespass occurs where a person intentionally enters upon land, possessed by another, or causes a thing or third person to do so.  *See Born v. Exxon Corp.*, 388 So.2d 933 (Ala. 1980).  Because Hendricks lawfully entered upon Cole's land in the line and scope of official police duties and trespass is a tort, the trespass claim must fail.

### VI. Conclusion

Taking Cole's deposition testimony as true, this court is unable to find any genuine issues of fact to support the claims asserted in the complaint.  Accordingly, summary judgment for the defendants is appropriate.

DONE this _25th_ day of November, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE